UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Y.Z., <br><br> *Petitioner*, <br><br> v. <br><br> LUIS SOTO, Director of Delaney Hall; TODD LYONS, Acting Director of Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> *Respondents*. | No. 2:25-cv-17841 (MEF) <br><br> **OPINION and ORDER** |

\* \* \*

The Respondents have made an across-the-board proposal, as to how the Court should handle a particular category of habeas corpus cases. See Respondents' Letter Update Regarding Bond Hearing (Nov. 26, 2025) ("Respondents' Letter") (ECF 6) at 1.

The Court will not accept the proposal, and writes briefly to explain why.

\* \* \*

Our immigration laws give certain federal officials the power to arrest noncitizens and remove them from the United States. See Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021).

But there is often a real lapse between arrest and removal --- in part so that the immigration courts have time to work through whether the noncitizen who has been arrested should, in fact, be removed. See id. at 527-29.

That starts to tee up the main question here: after arrest but before removal --- should a noncitizen be held in custody, or should he be released?

The answer comes from various parts of our immigration laws. Two are especially relevant here.

\*   \*   \*

The first: 8 U.S.C. § 1225(b).

Section 1225(b) generally covers noncitizens "who [are] arriving in the United States," id. § 1225(b)(1), and other "applicant[s] for admission." Id. § 1225(b)(2).

Think, for example, of someone who has just landed at a U.S. airport on an international flight.[1]

A noncitizen who is subject to § 1225(b) generally has to be detained.[2] See Jennings v. Rodriguez, 583 U.S. 281, 287-88 (2018). He must be kept in custody until his case is resolved, or until he is removed from the United States. See id. at 302-03.

\*   \*   \*

Now contrast this with 8 U.S.C. § 1226(a).

Section 1226(a) covers a noncitizen who is arrested after having been in the United States for a while. See id. at 289; Barco Mercado v. Francis, 2025 WL 3295903, at \*9 (S.D.N.Y. Nov. 26, 2025).

---

[1] See Jennings v. Rodriguez, 583 U.S. 281, 285, 287-88 (2018) (indicating that § 1225(b) applies when aliens are detained having "arrived at an official 'port of entry' (e.g., an international airport or border crossing)"); see also, e.g., Barco Mercado v. Francis, 2025 WL 3295903, at \*9 (S.D.N.Y. Nov. 26, 2025); Tuser E. v. Rodriguez, 370 F. Supp. 3d 435, 439-40 (D.N.J. 2019); Perez v. Aviles, 188 F. Supp. 3d 328, 330-31 (S.D.N.Y. 2016).

[2] "Generally," because there are exceptions. See 8 U.S.C. § 1882(d)(5)(A) (indicating that federal officials may "for urgent humanitarian reasons or significant public benefit" temporarily parole aliens detained under § 1225(b)); cf. Jennings, 582 U.S. at 300 (noting that this "express exception to detention implies that there are no other circumstances under which aliens detained dunder § 1225(b) may be released").

2

Think, for example, of someone like the petitioner in this case --- arrested after having allegedly lived here for around two years. See Verified Petition for Habeas Corpus (ECF 1) ¶¶ 1,3.[3]

For these sorts of noncitizens, the law is different.

Noncitizens who are arrested after having lived in the United States for a while do not generally have to be detained.[4] See 8 U.S.C. § 1226(a)(1)-(2) (officials "may continue to detain" these noncitizens or "may release" them on "bond") (emphases added); Jennings, 583 U.S. at 288.

They are instead entitled to a bond hearing before an immigration court. See Gomez v. Hyde, 2025 WL 1869299, *2 (D. Mass. July 7, 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)(1) and Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021)); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022).

At the hearing, the immigration court decides: release the noncitizen from custody before a final decision is made on whether he will be removed, or hold him in custody until then. See Gomez, 2025 WL 1869299, *2; 8 U.S.C. § 1226(a)(1)-(2).

\* \* \*

---

[3] In other cases that the Court has recently handled, the noncitizen/habeas petitioner has also been arrested after roughly two years in the United States. See Mboup v. Field Off. Dir., 2025 WL 3062791, at *1-2 (D.N.J. Nov. 3, 2025); Petition for Writ of Habeas Corpus (ECF 1) ¶ 34, Ortega Alvarez v. Noem, No. 2:25-cv-17401 (D.N.J. Nov. 13, 2025; Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Complaint for Injunctive and Declaratory Relief (ECF 1) at ¶¶ 55, 59, Martinez Ron v. Lyons No. 2:25-cv-17359 (D.N.J. Nov. 11, 2025). In some others, the period of time was much longer. See also, e.g., Verified Habeas Corpus Petition (ECF 1) ¶¶ 1,9, Contreras Amaya v. Bondi, No. 2:25-cv-16742 (D.N.J. Oct. 20, 2025) (13 years); Petition for Writ of Habeas Corpus (ECF 1) ¶¶ 1-2, Rojas-Jose v. Soto, No. 2:25-cv-17826 (D.N.J. Nov. 21, 2025) (same); Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (ECF 1) ¶¶ 12, 15, Patel v. Tsoukaris, No. 2:25-cv-16951 (D.N.J. Oct. 27, 2025) (26 years).

[4] Again: "generally," because there are exceptions. See, e.g., 8 U.S.C. § 1226(c).

3

To boil it down: a noncitizen who is arrested while she is "arriving in the United States" must be detained (under Section 1225(b)), while a noncitizen arrested after having lived in the United States for a while gets an immigration-court bond hearing to decide whether she should be detained (under Section 1226(a)).[5]

\* \* \*

But things are said to have changed.

Acting under a policy issued by memo in July 2025, federal immigration officials now take a different approach.  See Bethancourt Soto v. Soto, 2025 WL 2976572, at \*2 (D.N.J. Oct. 22, 2025); see also Answer to Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive relief ("Answer") (ECF 3) at 8 n.3, Patel v. Tsoukaris, No. 2:25-cv-16951 (D.N.J. Oct. 29, 2025).

Under the July 2025 policy, the two categories laid out above have purportedly been collapsed into one.

Noncitizens in the second group (those who have been in the United States) are now to be treated like noncitizens in the first group (those who have just arrived).  See Bethancourt Soto, 2025 WL 2976572, at \*2; see also Answer at 8 n.3, Patel v. Tsoukaris, No. 2:25-cv-16951 (D.N.J. Oct. 29, 2025).[6]

And because noncitizens in the first group are not eligible for bond hearings, see Jennings, 583 U.S. at 287-88, 302-03, the July 2025 policy means that those in the second group must be detained, too.  They do not get bond hearings either.

In a nutshell: under the new policy, noncitizens who before July 2025 would have been able to ask for an immigration-court bond hearing no longer have that option.  They are, instead, simply held in custody --- with no obvious way to seek release.

\* \* \*

---

[5]  Recall: there are exceptions to all this.  See footnote 2, footnote 4.  Put those aside, though, because they are not relevant here.

[6]  Cf. In re Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025) (adopting this interpretation of the relevant immigration-law provisions).

4

Some noncitizens in the just-referenced situation have filed habeas corpus cases in federal court.

How have these come out?

In New Jersey, around 100 such cases have been resolved by federal district judges. See Transcript of Court Conference ("Transcript") (ECF 14) at 2:17-3:13. The cases have gone before many different judges. But in no case has a federal judge in this state concluded that the July 2025 policy has it right --- that mandatory detention, with no possible bond hearing, is required as to all noncitizens, regardless of whether they were living in the United States before being detained. See id. at 3:7-13. Rather, in every one of the 100 or so cases, the judge has held that a noncitizen who has been here for a while must be (i) given a bond hearing (about 4/5 of the cases have so held), or (ii) released (about 1/5 of the cases). See id. at 31:10-32:8.[7]

A number of these sorts of cases have also been filed before the undersigned.

In each, the undersigned has come to the same conclusion: a bond hearing is required. See, e.g., Order (ECF 5), Ortega Alvarez v. Noem, No. 2:25-cv-17401 (D.N.J. Nov. 17, 2025); Order (ECF 10), Martinez Ron v. Lyons, No. 2:25-cv-17359 (D.N.J. Nov. 13, 2025); Text Order (ECF 4), Rojas-Jose v. Soto, No. 2:25-cv-17826 (D.N.J. Nov. 25, 2025); Text Order (ECF 4), Flores Sanchez v. Soto, No. 2:25-cv-18031 (D.N.J. Dec. 5, 2025); Text Order (ECF 4), Aygun v. Soto, No. 2:25-cv-18540 (D.N.J. Dec. 12, 2025).

And in the more recent of those cases, the undersigned has entered an order indicating: (i) that the case seems controlled by the Court's prior decisions; (ii) that if there is a reason why the case is factually distinguishable from the prior decisions, federal officials should explain how; (iii) that if

---

[7] Most of the decisions referenced in the text are not published, so they can be hard to track down. But a senior supervisory Assistant United States Attorney provided to the Court at oral argument last week all of the information cited in the paragraph to which this footnote is attached. See Transcript at 3:1-13. In doing so, the AUSA noted his personal involvement in a majority of the referenced cases. See id. at 3:3-6. The Court accepts as accurate the AUSA's description of this district's overall docket in this area.

5

there is no persuasive explanation, a bond hearing before an immigration court must be held by a specified date and time; and (iv) that if no bond hearing is held by then, federal officials must explain why not.  See, e.g., Text Order (ECF 4), Ortega Alvarez, No. 2:25-cv-17401 (D.N.J. Nov. 14, 2025); Text Order (ECF 4), Rojas-Jose, No. 2:25-cv-17826 (D.N.J. Nov. 25, 2025); Text Order (ECF 2), Bernabe Vasquez v. Soto, No. 2:25-cv-18036 (D.N.J. Dec. 1, 2025); Text Order (ECF 4), Flores Sanchez v. Soto, No. 2:25-cv-18031 (D.N.J. Dec. 5, 2025).

This has happened on a quick timeline.

The Court has often entered an order along the above lines within a few business hours of the case being filed.  See, e.g., Text Order (ECF 2), Bernabe Vasquez, No. 2:25-cv-18036 (D.N.J. Dec. 1, 2025); Text Order (ECF 4), Aygun v. Soto, No. 2:25-cv-18540 (D.N.J. Dec. 12, 2025).

And the Court has generally required bond hearings go forward within 24 to 48 hours.  See, e.g, Order (ECF 5), Ortega Alvarez, No. 2:25-cv-17401 (D.N.J. Nov. 17, 2025); Text Order (ECF 4), Rojas-Jose, No. 2:25-cv-17826 (D.N.J. Nov. 25, 2025); Text Order (ECF 2), Bernabe Vasquez, No. 2:25-cv-18036 (D.N.J. Dec. 1, 2025).

The reason for the fast turnaround is not hard to see.

The track record that has been developed by now is both extensive and uniform.  As noted, in every case decided by a federal judge in this state, disallowing bond hearings across the board has been held to violate the immigration laws.

And the undersigned has also reached and resolved the precise issue these cases raise, and on multiple prior occasions.

This means that from the moment each new lawsuit comes before the undersigned, its result is essentially foreordained.  Unless there is a factual distinction to be drawn, or new law comes down --- it is clear the Court will decide that the noncitizen who brought the case is entitled to a bond hearing.

So why make him wait, in custody, for what is an all but inevitable result?

                              *   *   *

Against this backdrop, the Respondents have made a systematic "proposal" --- that the undersigned slow things down, and only

"order bond hearings within five to seven days." Respondents' Letter at 1.

There are three main stated bases for the request. None is persuasive.

\* \* \*

The <u>first</u> basis for the request: some of the noncitizens who have filed habeas cases may want more time to prepare for their bond hearing --- to gather evidence, so they can put their best foot forward. <u>See id</u>.

But many noncitizens file habeas petitions only after having done the prep work for their bond hearing. <u>See</u> Transcript at 25:19-27:1.

True, some noncitizens will need more time to get ready.

But why delay <u>all</u> noncitizens' bond hearings by 5-7 days because <u>some</u> noncitizens may want more time? Those noncitizens who want pushed-off bond hearings can simply say so.[8]

\* \* \*

The <u>second</u> argument for a 5-7 day delay: some petitions name as respondents the Department of Homeland Security ("DHS") officials who hold the detainees, but not the Department of Justice ("DOJ") officials who control the immigration courts. <u>See id</u>. at 15:22-18:13; 21:15-22:16; <u>see also</u> Respondents' Letter at 1.

The argument seems to be this: a judicial order to DHS saying "provide a bond hearing" takes some time to make stick --- because DHS must then ask DOJ (by hypothesis, not named as a respondent in the habeas case) to turn around and do the hearing. <u>See</u> Transcript at 15:25-16:10. Making an intra-executive-branch ask, it is suggested, takes some added time. <u>See id</u>. at 15:25-16:10, 17:13-18:13.

---

[8] As noted, the Court has directed that bond hearings be conducted by a certain date and time, and that an explanation be provided if a hearing has not been done by then. <u>See</u>, <u>e.g.</u>, Order (ECF 5), <u>Ortega Alvarez</u>, No. 2:25-cv-17401 (D.N.J. Nov. 17, 2025). If the reason there has been no hearing is that the noncitizen has asked for more time, that is a solid explanation.

7

It is hard to know how much of a practical issue this is. Is it really all that time-consuming for DHS to work things through with DOJ?

And this does not seem like it will come up too often. Immigration lawyers can sidestep all of this, simply by listing both DHS and DOJ officials as respondents, as was done in this case.

To be sure, the issue may sometimes matter.

But when and if it does, it can be addressed on a case-by-case basis --- without the need to build in 5-7 extra days of cushion across the board. If officials explain that a bond hearing was not held by the deadline because DHS needed more time with DOJ --- then things can be taken from there. Fact-gathering might be undertaken as to any case-specific reason for the missed deadline, for example. A new deadline for a bond hearing might be set. Or consideration might be given to whether a bond hearing should simply be foregone in that case in favor of release --- a remedy that some judges around the country have opted for. See, e.g., Barco Mercado, 2025 WL 3295903, at *13; Zumba v. Bondi, 2025 WL 2753496, at *11 (D.N.J. Sept. 26, 2025).

\*   \*   \*

The third and final argument for 5-7 days' delay is based on the burden a fast turnaround puts on the federal government. See Respondents' Letter at 1.

But that argument does not work.

For more than 40 years, federal officials have worked to ensure rapid hearings for detained noncitizens. The entity that operates the Nation's immigration courts is the Executive Office for Immigration Review ("EOIR"). Soon after it was created in 1983, EOIR issued its first operating memorandum. It stated:

> As previously established by INS policy before the establishment of EOIR and by continuation of that policy during the past year, detained cases and detained bond redetermination hearings should be calendared at the earliest possible date consistent with the uniform Docketing System and all efforts shall be made to complete these cases expeditiously. The calendaring of detained cases and detained bond redetermination hearings shall be of the highest

8

> priority relative to the calendaring of all other types of cases.

Policy Memo 20-07, Sirce E. Owen, Acting Deputy Director, Exec. Off. for Immigr. Rev., Case Management and Docketing Practices Memo (Jan. 31, 2020) ("2020 Memo") (ECF 12-1) at 1-2 (quoting Operating Policies and Procedure Memorandum 84-1, Case Priorities and Processing (Feb. 6, 1984) at 1) (emphasis in original).

In the decades since, "EOIR has repeatedly reiterated this policy, and it remains clear and unequivocal EOIR policy that . . . all detained cases should be prioritized for docketing and adjudication." 2020 Memo at 2.

And EOIR stated in 2020 that "custody redetermination hearings [that is, bond hearings] should occur no later than three to five days after the date the . . . request [for a hearing] was received." Id. (emphasis added).

Per the current Immigration Court Practice Manual: "[i]n general, after receiving a request for a bond hearing, the Immigration Court schedules the hearing for the earliest possible date . . . ." Exec. Off. for Immigr. Rev., Immigration Court Practice Manual § 9.3(d) ("2025 Practice Manual") (ECF 12-2) at 3.

Bottom line: for generations, fast bond hearings have been part of the DNA of American immigration courts.[9]

The goal, as noted, has long been to have such hearings in 3-5 days. See 2020 Memo at 2.

So why does it make sense, now, to wait 5-7 days?

                \*   \*   \*

And the point is sharper yet.

Before the July 2025 memo was issued, asking for a bond hearing was simple --- fill out a form, or put in a phone call. See 2025 Practice Manual at § 9.3(c) (describing how noncitizens can request a hearing).

---

[9] Indeed, there are many ways in which immigration courts are in general purpose-built for rapid determinations. See Khalil v. Joyce, 780 F. Supp. 3d 476, 518-19 (D.N.J. 2025).

9

But under the July 2025 memo, there is no longer any possibility that officials will act on a bond hearing request. Indeed, that is the basic effect of the memo's directive that nearly all noncitizens are to be treated as subject to Section 1225(b).

This means that a noncitizen who wants a bond hearing can no longer just complete a form or make a call --- he must file a federal habeas corpus case.

And that takes real time.

Here, for example, the habeas petition was eleven pages long. It needed to be served. See Braden v. 30th Jud. Cir. Ct., 410 U.S. 484, 495 (1973). And it was filed with help from a lawyer; getting one, especially while detained, presumably took some time.

In short: kicking off a federal-court case plainly takes much more time than filling out a form or placing a call.[10]

\*   \*   \*

What this all adds up to.

The long-standing expectation was of a bond hearing within 3-5 days of the request --- so there is no reason to now set hearings for 5-7 days out.

And all the more so given the added time it now takes because of the July 2025 memo for a noncitizen to make a hearing request in the first place. A request must now essentially be made by filing a federal habeas corpus lawsuit, not just by making a call or completing a form.

Put differently: it makes little sense to build in delay on the back-end (5-7 days versus the old 3-5 days) when there is also now a great deal of new delay on the front-end (because of the extra time it takes to file a lawsuit). Why push out the finish line, as the Respondents propose, at the precise moment that the starting line has been pulled back?

\*   \*   \*

---

[10] This may be why, per the AUSA referenced in footnote 7, habeas petitions by noncitizens seeking a bond hearing in this district are generally filed by people who have already been custody for around a month. See Transcript at 29:18-23.

In sum, the Respondents' arguments for delay do not hold up.

An across-the-board delay is not needed to protect petitioners. They can protect themselves by seeking delay when they want it.

And a delay is not needed to deal with DHS/DOJ issues.  Even where they might matter, they can be addressed on a case-by-case basis.

Finally, given the relevant track records here --- of New Jersey federal judges' holdings that hearings are required, and of immigration courts' long history of moving very quickly in this area --- the argument from administrative burden is not strong enough.  It does not justify leaving people in custody for extra time, waiting for hearings that they are plainly entitled to under our law --- and that they should already be getting, even without first having to file a federal lawsuit.

*   *   *

The Court will continue handling the cases covered by this Opinion on a fast-turnaround basis.  The Respondents' request for 5-7 added days is denied.

IT IS on this 12th day of December, 2025, **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.